UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **ERICKA NELSON,** | : | Hon. Joseph H. Rodriguez |
| *Plaintiff*, | : | 1:20-cv-18602 |
| v. | : | Opinion |
| **HARRAH'S ATLANTIC CITY OPERATING COMPANY, LLC D/B/A HARRAH'S RESORT ATLANTIC CITY and JOHN DOES 1-10,** | : | |
| *Defendants*. | : | |

Plaintiff Ericka Nelson ("Nelson") sued Defendant Harrah's Atlantic City Operating Company, LLC D/B/A Harrah's Resort Atlantic City ("Harrah's") for negligence after Nelson slipped and suffered injuries while walking through Harrah's Atlantic City casino. Harrah's moved for summary judgment, arguing principally that Harrah's had no actual or constructive notice of the hazard that caused Nelson's fall. Fact issues preclude the Court from granting Harrah's motion.

I. Introduction

Harrah's is a Delaware corporation with a principal place of business in Nevada. [Dkt. 1 ¶ 15]. Harrah's owns and operates a casino in Atlantic City, New Jersey. Nelson, a resident of Burlington County, New Jersey, was a guest at the casino. [Dkt. 1 ¶ 15; Dkt. 1-2, Am. Compl. ¶ 1]. Nelson claims that, on April 1, 2018, around 4:45 a.m., she stepped on a wet substance while walking through a casino hallway, slipped, fell to the ground, and was injured. [Dkt. 30,

1

Harrah's SUMF ¶ 1].[1]  Nelson testified that she could not see the substance on the floor when she stepped in it but determined while on the ground that the substance appeared to be vomit. [Harrah's SUMF ¶¶ 1, 3, 6; Nelson's SUMF ¶ 25].

Approximately fifteen minutes before Nelson's accident, a surveillance camera zoomed in on and moved to track the movements of another patron ("Patron X") as he passed through the same hallway with two other individuals. [*See* Dkt. 30, Exh. D; Dkt. 38, Nelson's SUMF ¶¶ 11–15]. The surveillance video shows that Patron X was staggering.  Patron X also leaned on and had his arm around one of the other individuals.  When Patron X reached the same approximate location in the hallway where Nelson slipped, Patron X bent forward and directed his face toward the floor for approximately one second.  When Patron X took his next step forward, Patron X's foot slipped.  Nelson contends that this surveillance video appears to show that Patron X vomited on the floor approximately fifteen minutes before Nelson's accident. [*See* Nelson's SUMF ¶¶ 12–14].  Harrah's agrees that vomit was on the floor approximately fifteen minutes before Nelson slipped and cites the surveillance video as evidence. [Harrah's SUMF ¶ 4]. Harrah's both disagrees that the surveillance video shows Patron X appearing to vomit on the floor, [Dkt. 42-1, Harrah's Resp. to Nelson's SUMF ¶ 12], and agrees that Patron X "might have spit up/vomit" on the floor.  [Dkt. 30 at 9].

Nelson filed this lawsuit in the New Jersey Superior Court, Burlington County asserting a single count of negligence against Harrah's.  [*See* Dkt. 1-2, Am. Compl.].  Harrah's removed the

---

[1] "SUMF" refers to the statement of undisputed material facts submitted by each party pursuant to L. Civ. R. 56.1(a).

case to federal court based on diversity of citizenship under 28 U.S.C. § 1332.  [*See* Dkt. 1].

After discovery,[2] Harrah's moved for summary judgment.  [Dkt. 30].

## II. Jurisdiction

The Court has jurisdiction over this case under 28 U.S.C. § 1332.

## III. Standard of Review

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  *Pearson v. Component Tech. Corp*., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *accord* Fed. R. Civ. P. 56(c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  *Id.*  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

---

[2] After Harrah's moved for summary judgment, Nelson's counsel moved to reopen discovery so that Nelson could depose "someone with knowledge of how the video surveillance (and the camera movements shown on the video surveillance) was made." [Dkt. 39-1 at 2].  Judge Donio denied this motion.  [Dkt. 49].

The moving party has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.*; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256–57.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

## IV.  Analysis

Harrah's contends that Nelson's negligence claim cannot survive summary judgment. "To sustain a cause of action for negligence, a plaintiff must establish four elements: '(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages.'" *Townsend v. Pierre*, 110 A.3d 52, 61 (N.J. 2015) (quoting *Polzo v. Cnty. of Essex*, 960 A.2d 375 (N.J. 2008)).[3] "The common law imposes a duty of care on business owners to maintain safe premises for their customers." *V.C. by Costello v. Target Corp.*, 454 F. Supp. 3d 415, 424 (D.N.J. 2020) (citing *Nisivoccia v. Glass Gardens, Inc.*, 818 A.2d 314 (N.J. 2003)). This duty requires business owners to take "reasonable care to guard against any dangerous conditions on his or her property that the owner either knows about or should have discovered. That standard of care encompasses the duty to conduct a reasonable inspection to discover latent dangerous conditions." *Hopkins v. Fox & Lazo Realtors*, 625 A.2d 1110, 1113 (N.J. 1993) (citing

---

[3] There is no dispute that New Jersey law applies to Nelson's negligence claim.

*Handleman v. Cox*, 187 A.2d 708 (N.J. 1963)). "Ordinarily an injured plaintiff asserting a breach of that duty must prove … that the defendant had actual or constructive knowledge of the dangerous condition that caused the accident." *Nisivoccia*, 818 A.2d at 316 (citing *Brown v. Racquet Club of Bricktown*, 471 A.2d 25 (N.J. 1984)).

To determine whether a business owner knew or should have known of a foreign substance on a floor in a slip-and-fall case, courts consider (1) whether there was a hazardous foreign substance on the floor; (2) whether there is direct evidence of the business's actual or constructive knowledge of the hazard; and (3) if there is no direct evidence, whether the hazard was "on the floor long enough to give management or employees constructive notice" of the hazard. *David by Berkeley v. Pueblo Supermarket of St. Thomas*, 740 F.2d 230, 233–34 (3d Cir. 1984). "The mere '[e]xistence of an alleged dangerous condition is not constructive notice of it." *Arroyo v. Durling Realty, LLC*, 78 A.3d 584, 586 (N.J. Super. Ct. App. Div. 2013) (quoting *Sims v. City of Newark*, 581 A.2d 524 (N.J. Super. Ct. Law Div. 1990)).

Harrah's does not dispute that there was vomit on the casino floor or that Nelson slipped on the vomit. Harrah's only argues that it is entitled to summary judgment because Nelson has no direct or circumstantial evidence that Harrah's knew or should have known of the vomit on the floor. [Dkt. 30 at 8]. Harrah's points out that Nelson herself testified that she was unable to see the vomit on the floor, [Dkt. 30 at 11–12], and that there is no evidence that anyone notified Harrah's staff of the hazard. [Dkt. 30 at 8].

Nelson responds that the available evidence creates a fact question as to whether Harrah's knew or should have known of the vomit on the floor. With respect to Harrah's actual knowledge, Nelson argues that surveillance footage shows that someone at Harrah's "manually operated the camera recording [Patron X] as he walked down the hallway, vomited on the floor,

5

and then slid on his vomit." [Dkt. 38-1 at 4].[4] Nelson argues that the "obvious, and perhaps irrefutable inference" from the security video is that "someone was operating the surveillance camera for [Harrah's] during the creation of the dangerous condition, and manipulating the camera to record [Patron X] as he made the dangerous condition." [Dkt. 48 at 2]. Nelson also points out that Harrah's does not dispute that it "did not clean the floor or provide any warning of the dangerous condition" before Nelson slipped. [Dkt. 38-1 at 4]. Nelson concludes that Harrah's knew that there was vomit on the floor which Harrah's failed to clean before Nelson slipped.[5]

---

[4] In her surreply brief, Nelson points to a request for admission ("RFA")—which she attaches as evidence for the first time to the surreply—where Harrah's conceded that the security camera movements that occurred when Patron X vomited on the floor "were caused to happen by a person(s) operating all or part of the Video Recording Device as the Video Recording was being made." [Dkt. 48 at 2; Dkt. 48-1 ¶ 2]. The Court declines to consider this admission as evidence supporting Nelson's position because Nelson introduces this evidence for the first time in her surreply. *See DelRio-Mocci v. Connolly Properties Inc.*, No. CIV. A. 08-2753WJM, 2009 WL 2989537, at *3 (D.N.J. Sept. 16, 2009), *aff'd*, 672 F.3d 241 (3d Cir. 2012) ("A non-moving party cannot raise new facts or arguments in a sur-reply, because the moving party will not have the opportunity to respond." (citing *Smithkline Beecham PLC v. Teva Pharms. USA, Inc.*, Civil Action Nos. 04–0215, 05–05362007 WL 1827208 (D.N.J. June 22, 2007))).

[5] In a surreply, Nelson contends that she served an RFA upon Harrah's on this issue, that Harrah's response was deficient under the Federal Rules of Civil Procedure, and that this deficient response creates an issue of fact that precludes summary judgment. The RFA asked Harrah's to "[a]dmit that person(s) employed by, or on behalf of, Defendant viewed the Video Recording [when Patron X vomited on the floor] as the Video Recording was being Made. [Dkt. 48-1 ¶ 12]. Harrah's responded "Denied as stated." [*Id.*]. Nelson argues that this response is deficient under Federal Rule of Civil Procedure 36(a)(4) because it does not specify which portion of the question is denied and which part is admitted. [Dkt. 48 at 3].

The Court declines to consider this argument because Nelson raised it for the first time in her surreply. Nelson's opposition brief does not cite this RFA specifically, argue that the response is deficient under Rule 36, or claim that it is evidence that creates a fact issue for the purposes of summary judgment. As noted above, the Court cannot consider new facts or arguments in a surreply. *DelRio-Mocci*, 2009 WL 2989537, at *3 (citations omitted).

In reply, Harrah's argues that the security video provides no evidence that Harrah's knew of the dangerous condition and that it is "pure speculation" that Harrah's employees operated the security camera. [Dkt. 42 at 5].

As the parties' arguments demonstrate, the issue is whether the fact that "someone" was operating the security camera when Patron X vomited on the floor, without more, permits an inference that Harrah's actually knew of the hazard. *David by Berkeley v. Pueblo Supermarket of St. Thomas* is instructive on this point. 740 F.2d 230 (3d Cir. 1984). In that case, the Third Circuit ruled on an appeal of plaintiff's verdict in a slip-and-fall action and found that there was no evidence of actual knowledge presented at trial. *Id.* at 236. The plaintiff was injured when she slipped on cottage cheese spilled on a grocery store floor. *Id.* at 232. The plaintiff's partner, who accompanied the plaintiff in the store, testified at trial that another customer stated that she had informed "them" of the spill before the plaintiff fell. *Id.* at 233. The Third Circuit indicated that this was the only evidence submitted to support the store's actual knowledge. The Third circuit found that this customer's "statement indicated only that she 'told them' about the foreign substance on the floor. No evidence was introduced concerning who [the customer] actually warned. Consequently, we cannot find that [the defendant] had actual notice." *Id.* at 236.

Following *David*, the Court finds that Nelson has not provided evidence of Harrah's actual knowledge. While it is reasonable to infer from the surveillance camera movements that "someone" manipulated the surveillance camera to focus on Patron X and, therefore, that "someone" knew that Patron X vomited in the hallway, Nelson does not introduce evidence indicating who that "someone" is, whether that "someone" worked for or was an agent of Harrah's, or whether that "someone" was onsite when the events occurred. Thus, like the

plaintiff in *David*, Nelson has no evidence as to who—if anyone—at Harrah's had actual knowledge that Patron X vomited on the floor when it occurred.

The Court now considers whether Harrah's had constructive notice of the vomit on the floor, and concludes that this is a fact issue that cannot be resolved on summary judgment. As noted above, "[a] defendant has constructive notice when the condition existed for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent." *Troupe v. Burlington Coat Factory Warehouse Corp.*, 129 A.3d 1111, 1114 (N.J. Super. Ct. App. Div. 2016) (quotation marks and citation omitted). "The period of time sufficient to prove a defendant's constructive knowledge also depends on the characteristics of and surrounding the dangerous condition." *Yazujian v. PetSmart*, No. CV 13-06202, 2016 WL 4408817, at *9 (D.N.J. Aug. 16, 2016). Constructive notice based on time and the characteristics of the dangerous condition is generally a fact issue for jury consideration. *Garcia v. Walmart, Inc.*, No. CV1703118KMCLW, 2021 WL 754006, at *5 (D.N.J. Feb. 26, 2021); *Yazujian*, 2016 WL 4408817, at *9.

No clear rule exists as to how much time is sufficient to create an issue on the issue of constructive knowledge, and "courts have certified a wide range of times for jury consideration." *Yazujian*, 2016 WL 4408817, at *8 (citations omitted). "[C]ourts have often used 45 minutes as a benchmark." *Garcia*, 2021 WL 754006, at *5 (citing *McCracken v. Target Corp.*, No. CIV. 09-4816 RBK/JS, 2011 WL 1466075, at *3 (D.N.J. Apr. 18, 2011)). But how far below this forty-five-minute benchmark can plaintiffs go before having their claims dismissed for lack of constructive notice as a matter of law? Some have found that twenty minutes is sufficient to create an issue of fact, while others have found that twenty minutes is not enough. *See Garcia*, 2021 WL 754006, at *5-6 (collecting cases) (concluding that "there is [not] a body of New

Jersey case law sufficient to convert this issue [of whether twenty minute is sufficient] into one of law."). One court found that four minutes is too short to permit an inference of constructive notice, *Bowman v. Wal-Mart Stores E., LP*, No. 14-3182, 2015 WL 568570, at *6 (E.D. Pa. Feb. 10, 2015), while another found that four minutes was sufficient when coupled with other factors. *Romeo v. Harrah's Atl. City Propco, LLC*, 168 F. Supp. 3d 726, 732 (D.N.J. 2016) (finding that four minutes was sufficient "when coupled with the video surveillance of the area and the fact that [an employee] was in the area during the existence of the spill"). There appears to be no consensus on this issue.

In this case, the Court finds that Harrah's constructive knowledge of the hazard is a fact issue for the jury to consider. There is no dispute that the vomit sat on the floor for approximately fifteen minutes before Nelson's accident, and that Harrah's did not attempt to clean or warn patrons of the vomit. There is also no dispute that the accident occurred in a hallway through which "multiple people" walked in the fifteen minutes between when Patron X vomited on the floor and when Nelson slipped. [Dkt. 38, Nelson's SUMF ¶ 8]. A "a rational juror could find that [this hallway] is a high traffic area, raising an inference that a reasonable business would attend to it more than [Harrah's] did here," even if the vomit was difficult to see on the hallway floor. *Garcia*, 2021 WL 754006, at *6. And while the uncertainty over who operated the security camera prevents an inference of actual knowledge, Harrah's maintained a security camera to monitor events in that hallway, someone did capture the events at issue here, and Harrah's did nothing to clean the vomit or warn patrons before Nelson's accident occurred. A jury must decide based on these facts whether Harrah's should have known of the hazard before Nelson slipped. *Garcia*, 2021 WL 754006, at *5 (noting that questions of constructive

knowledge are typically jury questions).  The Court therefore must deny Harrah's motion for summary judgment.

## V. Conclusion

For the reasons set forth above, the Court will deny Harrah's motion for summary judgment.  An appropriate order will follow.

August 12, 2022 /s/ Joseph H. Rodriguez

Hon. Joseph H. Rodriguez, USDJ